UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRIS HANUSEK, JESSE SWAFFORD, and BRIAN KOCHMAN, on behalf of themselves and all others similarly situated**, <br><br> Plaintiffs, <br> **v.** <br><br> **FCA US LLC** <br><br> Defendant. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br> **WITH JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs Chris Hanusek, Jesse Swafford, and Brian Kochman ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned counsel, bring this Class Action Complaint against Defendant FCA US LLC (hereinafter "Defendant," "FCA" and/or "Chrysler"). Plaintiffs allege the following based upon personal knowledge as to their own acts, and based upon the investigation conducted by their counsel as to all other allegations:

### NATURE OF THE CASE

1.      This action concerns Chrysler's refusal to honor its warranty and cover the cost of repairing a defect in the engines of Chrysler's Jeep Wrangler model years 2012 to 2017 (collectively, "Jeeps" and "Class Vehicles").

2.      At the point of sale, Class Vehicles suffer from a defect (the "Defect," described in detail below) in the engine's heating and cooling system (hereinafter referred to generally as the "Cooling System"). Upon information and belief, the Defect consists of a reaction between the manufacturer-installed coolant and the aluminum components in the engine, namely those comprising the Cooling System. Upon information and belief, the Defect can be exacerbated by the presence of flux left over from fabrication of the radiator. The Defect results in the build-up of sludge within the heater core and other components of the Cooling System.

1

3.    Early in its investigation of the Defect, Chrysler and its dealerships identified various particles in the coolant sludge including casting sand and flux, a characterization that was subsequently shared with service departments. This information informally was relayed to a limited number of consumers and became a common explanation of the problem that many Jeep owners were experiencing.  These particles exacerbate rather than cause the sludge.

4.    The build-up of sludge causes the Class Vehicles' Cooling Systems to malfunction and fail. Specifically, the Defect causes damage to the heater core and other components of the Cooling System, impairing the Class Vehicles' heating, cooling, and defrost functions.

5.    Chrysler knew or should have known about the Defect from pre-sale testing of the Class Vehicles before the sale of the first Class Vehicle in late 2011. Moreover, hundreds of publicly-available consumer complaints, as well as Chrysler's own customer complaint records, identifying the large scale heating and cooling failures, gave Chrysler notice of the pervasiveness of the Defect as early as June 2012.

6.    Even after learning of the Defect, Chrysler did not disclose it to potential purchasers or lessees through its advertising, marketing materials or through any other communications prior to their purchases. Instead, Chrysler continued to sell Class Vehicles without disclosing the Defect that was present at the point of sale.  As a result, Plaintiffs and the Class did not receive the benefit of their bargain in that had they been advised of the Defect at the point of sale, they either would not have purchased their vehicles or would have paid less for them than they did.

7.    Chrysler did not disclose the Defect to owners or lessees of Class Vehicles after their purchases, even when they brought their Class Vehicles into Chrysler dealerships for repairs that were directly related to the Defect.

8.    Every Class Vehicle was sold or leased to consumers by Chrysler through its authorized dealerships pursuant to express and implied warranties, including a "New Vehicle Limited Warranty" that provides "bumper to bumper coverage for three years or 36,000 miles" and a Powertrain Limited Warranty that covers the cost of all parts and labor needed to repair a powertrain component – including the engine – that is defective in workmanship and materials

within five years or 100,000 miles, whichever occurs first, calculated from the start date of the New Vehicle Limited Warranty. The New Vehicle Limited Warranty begins on the date a purchaser takes delivery of the vehicle or the date when the vehicle was first put into service, whichever is earlier.

9.      Plaintiffs and other Class Vehicle owners and lessees similarly situated (the "Class" or "Class Members") have requested that Chrysler or its authorized dealers repair and/or replace any vehicle components damaged by the existence of the Defect, but it refuses to fully cover the costs of parts, labor, and repair. Instead, Chrysler states either that the warranty does not cover the repair because the heater core failure was created by "external factors" such as owner "misuse," or that the warranty period had elapsed.

10.     Plaintiffs bring claims for breach of express warranties, breach of implied warranties, breach of the Magnuson-Moss Warranty Act, and breach of the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs and the Class seek to recover damages they incurred as a result of Chrysler's failure to inform Plaintiffs and the Class about the Defect, and its failure to repair or replace engine and/or Cooling System components damaged as a result of the Defect. Moreover, Plaintiffs and the Class also seek a declaration that the Defect should be covered under the Powertrain Warranty and/or an extension of the New Vehicle Limited Warranty to cover repair of the components damaged as a result of the Defect.

11.     Plaintiffs request an injunction ordering Chrysler to inform owners and lessees of the Class Vehicle of the Defect.

12.     Plaintiffs also seek attorney's fees and costs, pre- and post-judgment interest, and all other remedies and relief as may be permitted by law.

## THE PARTIES

13.     Plaintiff Chris Hanusek, proposed Class representative, is a citizen of the State of Illinois, residing in Monroe County, Illinois.

14.     Plaintiff Jesse Swafford, proposed Class representative, is a citizen of the State of Illinois, residing in Monroe County, Illinois.

15.     Plaintiff Brian Kochman, proposed Class representative, is a citizen of the State of Illinois, residing in McLean County, Illinois.

16.     Defendant FCA US LLC is a Delaware limited liability company with its headquarters in Auburn Hills, Metro Detroit, Michigan.

## JURISDICTIONAL ALLEGATIONS

17.     United States District Court for the Southern District of Illinois has original subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed Class exceeds one hundred members, the aggregate amount in controversy (excluding interest and costs) exceeds $5,000,000.00, and there is the requisite degree of diversity of citizenship between the parties.

18.     The United States District Court for the Southern District of Illinois also has original subject matter jurisdiction over the Magnuson-Moss Warranty Act claim, 15 U.S.C. § 2301, pursuant to 28 U.S.C. § 1331.

19.     The United States District Court for the Southern District of Illinois can exercise supplemental jurisdiction over the Class's state law claims under 28 U.S.C. § 1367.

20.     The United States District Court for the Southern District of Illinois can exercise personal jurisdiction over Chrysler because it has regular and systematic contacts with the state of Illinois, in which it does business and places the Jeeps in the stream of commerce.

21.     The United States District Court for the Southern District of Illinois is a proper venue for this action, pursuant to 28 U.S.C. § 1391(b)(1), because Chrysler is subject to personal jurisdiction in this District, the sale of one or more of Plaintiffs' Jeeps occurred in this District, and such sale(s) gave rise to this action.

## THE DEFECT

22.     The power plant in Class Vehicles is a Pentastar V6 3.6 Liter engine (hereinafter "Pentastar"). Pentastar engines contain aluminum components. Beginning in 2011 when the Class

Vehicles went into production, Chrysler specified the engine fluids to be used and installed in them, including the type of coolant to be used. Thus, prior to the sale of each Class Vehicle, the fluids chosen and specified by Chrysler were installed. However, for Class Vehicles, a chemical reaction occurs when the factory installed system coolant chosen by Chrysler reacts with the Class Vehicles' aluminum engine and Cooling System components. This reaction is exacerbated when it occurs in the presence flux remaining from the fabrication process of any of the aluminum components. The result of the chemical reaction is the formation of a sludge that damages key components of the Cooling System, including especially the heater core, to fail.

23.    Plaintiffs and the Class do not learn of the existence of the Defect until their Class Vehicles' heating, cooling, and defrost functions quit working properly or completely fail. Upon information and belief, even newer Wranglers—including but not limited to the 2017 model year vehicles—are beginning to experience the manifestation of this Defect.

24.    The failure of the Cooling System in Class Vehicles compromises the safety of Class Vehicles. In the absence of a properly functioning Cooling System, operators cannot sufficiently defrost their Class Vehicles' windshields, rendering the vehicles difficult or impossible to drive in cold-weather conditions, like when freezing precipitation occurs when driving. In addition, certain vulnerable drivers and passengers are unsafe when the vehicles' Cooling Systems do not operate properly.  Vehicles without sufficient heating cannot safely be used to transport passengers in extremely cold temperatures, and without sufficient air conditioning cannot safely be used to transport people in extreme heat.

25.    The Defect cannot be cured by normal automotive maintenance because regular engine flushes do not completely remove the sludge from the heater core and other components of the Cooling System. Fouled components must be replaced.

26.    As early as December 12, 2012, Chrysler issued a STAR Case Report to its dealerships and authorized service centers about the manifestation of the Defect in Class Vehicles, as shown below. This STAR Case report shows that Chrysler knew of the Defect "Poor Heater System Performance"). Chrysler was able to identify the manifestation of the Defect ("Sludge may

build up and restrict coolant flow in the heater core."), and Chrysler knew that identification of problem could be difficult ("The heater core may still be restricted even if sludge is not visible in the overflow bottle."). Chrysler identified specific steps to take to temporarily resolve the problem (repeatedly flushing the Cooling System until the water "runs clear."). Finally, the STAR Case Report identifies the parts that must be replaced if the lesser repair efforts were ineffective (replacing the radiator, heater core, radiator cap, and engine oil cooler and coolant). Later STAR Case Reports, including one issued on December 5, 2014, are substantially similar but include an additional step for verification of heat after the repair.



Case Number:

**Release Date:** 12/12/2012

**Symptom/Vehicle Issue:** Poor Heater System Performance

**Note:** Sludge may build up and restrict coolant flow in the heater core. The heater core may still be restricted even if sludge is not visible in the overflow bottle.

**Diagnosis:**
1. Remove radiator cap and inspect coolant overflow bottle for buildup of sludge on. See (FIG1) and (FIG2)

Sludge

(FIG1)

_Contact the STAR Center for assistance if no solution is found_

er Group LLC



**CHRYSLER ALSO KNEW OR SHOULD HAVE KNOWN ABOUT THE DEFECT, IN PART, BECAUSE CONSUMERS HAVE REPORTED THE DEFECT TO CHRYSLER.**

27.     Thousands of Jeeps have been manufactured by Chrysler equipped with the Pentastar engine since the 2012 model year. Since that time, there have been widespread complaints regarding the Defect posted on the Internet by absent Class Members, often noting that they also have contacted Chrysler directly:

**#18  Wrangler 3.6**
Automatic transmission    26,000 miles

I bought my 2012 Jeep Wrangler used in February 2015 with approximately 11,110 miles. By this winter (2016) I had put approximately 26,000 miles on the vehicle. When I went to turn on the heat the driver's side was blowing cold air and the passenger's side hot. I took it to my local garage and they said I had casting sand built up and suggested I replace my heater core and radiator. They encouraged me to contact Chrysler to see if they would do a "good faith" warranty replacement since this was a known problem. I called Chrysler and they said I needed to take my Jeep to a dealership for an official diagnostic test before they would make a decision. The dealership informed me that my heater core was already replaced in Jan. 2015 and likely needed to be replaced. The part was still under a Mopar warranty thankfully, but Mopar wanted the dealership to flush the heater core before they would authorize replacement of the part. Soooo, my heater core was flushed and now I have heat again! However, if this is a problem that results from casting sand build up (which the dealership mechanic said it was) won't this just happen again? In summary, at 11,000 miles the heater core was replaced. The new heater core needed to be replaced after 26,000 miles, but was flushed instead. I'm thinking of trading in the 2012 model for a newer one if this is a known problem with this year...

http://www.carcomplaints.com/Jeep/Wrangler/2012/AC_heater/heater_not_working.shtml    (last visited on December 28, 2017).

**#15  Wrangler Sport 3.6L**
Automatic transmission    18,000 miles

2012 Wrangler Sport. No heat on the drivers side. After doing some research I learned that this is a common problem with the Wranglers and is likely caused because casting sand had not been sufficiently flushed from the engine block when manufactured. Coolant stirs up the casting sand and it then settles in the bottom of the radiator, heater core and overflow tank. The sediment in the heater core restricts coolant flow causing poor heating of the vehicle.

I checked my overflow tank and found about 3" of sand in the bottom. The service manager at the Jeep dealership said he did not have a recall, campaign or service bulletin on this and it would not be covered by Jeep. He said he'd not heard of the issue, but when he asked fellow service managers they had heard of it in older Wranglers. This is a pretty outrageous issue if you ask me. Nobody but Jeep dealers have serviced the vehicle, so where would significant amounts of sand-like residue come from to get into the cooling system?

Any feedback or help from the community would be appreciated.

http://www.carcomplaints.com/Jeep/Wrangler/2012/AC_heater/heater_not_working.shtml (last visited on December 28, 2017).

9

**#21**  **Wrangler Sahara 3.6L**
Automatic transmission    46,500 miles

Bought this used 2012 Jeep Wrangler Unlimited Sahara in September, 2016 from a dealer in Cincinnati, Ohio. I test drove the vehicle on a 88 degree day so I couldn't tell if the heater was working properly or not. After getting it home to northern Michigan and turning on the heater on the first cool fall day, I immediately noticed just cool air coming from the heating system on the driver's side. After paying for a heater core flush and a thorough evaluation by the Jeep dealer it was determined that the heater core was plugged. I was informed at that time that there was no recall on the heater core and the repair was not covered by warranty. With winter on the way, I had not choice but to fix it at a cost of $1,163. It seems based on many other stories like this, Jeep obviously had a supplier problem and should step up to the plate and cover these repairs.

http://www.carcomplaints.com/Jeep/Wrangler/2012/AC_heater/heater_not_working.shtml (last visited on December 28, 2017).



http://www.wranglerforum.com/f202/heater-core-no-drivers-heat-and-casting-sand-388066.html
(last visited on December 28, 2017).

**Heater Core, No Drivers Heat and Casting Sand**

I have a 2013 with 14,000 miles. The water pump was replaced in August at 9,600 miles due to the chirp.

I am currently getting blast furnace heat on the passenger side, Luke warm on the drivers side. I took it to the dealer today and they called, said it was fixed and blamed it on a sticky actuator in the duct work. When I arrived to pick it up, the problem was still there.

I explained the casting sand stories I have read on this forum and they said they would go ahead and replace the heater core tomorrow. They are expecting it to take two days because they have to pull the seats, console and dash. The A/C system also has to bled and then refilled.

http://www.wranglerforum.com/f202/heater-core-no-drivers-heat-and-casting-sand-388066.html
(last visited on December 28, 2017).

28.    In addition, numerous complaints have been filed with the National Highway Traffic Safety Administration ("NHSTA"), which Chrysler, like other vehicle manufacturers, monitors regularly. These complaints discuss, among other details, how operators have notified Chrysler of the Defect and the safety issues resulting from it.

29.    Selected examples of the NHSTA complaints about Jeep Wranglers are included below, unedited. These consumer complaints put Chrysler on notice of the Defect, which renders the Class Vehicles unsafe to operate under certain normal and expected conditions, like extreme cold, heat, or when a properly functioning defrost system is required for visibility.

- NHSTA Complaint on November 09, 2017 for a 2013 Wrangler-"HEATER DOES NOT PRODUCE WARM AIR ON DRIVER SIDE OF VEHICLE THROUGH FLOOR, VENT, OR DEFROST. DRIVING SPEED DOES NOT AFFECT TEMPERATURE ON DRIVER SIDE. HEAT WILL SOMETIMES GET WARM ON DRIVER SIDE AFTER AN HOUR OF DRIVING. APPEARS TO BE RELATED TO STAR CASE S12307000008. THIS IS A WIDE SPREAD, KNOWN ISSUE, THAT IS VERY EXPENSIVE TO REPAIR. IT IS DANGEROUS AS WELL DUE TO ICE BUILD UP ON WINDSHIELD BECAUSE THERE IS NO DEFROST HEAT ON DRIVER SIDE"

- NHSTA Complaint on November 13, 2017 for a 2013 Wrangler-"JUST PURCHASED, HEAT NOT WORKING. HAD HEATER CORE FLUSHED, HEAT WORKED FOR ONE WEEK AND NOW BLOWS VERY HOT ON RIGHT SIDE AND LUKE WARM ON LEFT SIDE. THE SAME SYMPTOMS AS THE CASTING SAND PLUGGING THE

HEATER CORE. I NOW HAVE TO TAKE BACK TO SHOP TO FLUSH HEATER CORE AGAIN. NOT GOOD."

- NHSTA Complaint on June 06, 2017 for a 2013 Wrangler-"THE VEHICLE HAS STOPPED BLOWING HOT AIR ON THE DRIVERS SIDE AND FEET, BUT WILL BLOW HOT AIR ON PASSENGERS SIDE. THIS LEADS TO ISSUES WITH DEFROSTING AND VISIBILITY."

- NHSTA Complaint on May 01, 2017 for a 2013 Wrangler-"THE VEHICLE HAS STOPPED BLOWING HOT AIR ON THE DRIVERS SIDE AND FEET BUT WILL BLOW HOT AIR ON PASSENGERS SIDE. THIS LEADS TO ISSUES WITH DEFROSTING AND VISIBILITY AS WELL AS THE DRIVER BEING SAFE AND ABLE TO FEEL THEIR FINGERS AND FEET WHILE DRIVING. I TOOK IT TO THE DEALER WHO SAYS THERE IS A STAR REPORT ON THIS ISSUE AND IT IS A WELL KNOWN ISSUE. JEEP HOWEVER SAYS I AM OUT OF WARRANTY SO THEY WILL NOT FIX IT. MY EXTENDED WARRANTY BOUGHT THROUGH THE DEALERSHIP SAYS THEY WILL NOT FIX IT. THE RADIATOR, HEATER CORE OVER FLOW TANK AND ALL OTHER RELATED COMPONENTS ARE THE RECOMMENDED REPAIR."

- NHSTA Complaint on January 03, 2017 for a 2013 Wrangler "TL* THE CONTACT OWNS A 2013 JEEP WRANGLER. UPON CHECKING THE VEHICLE'S COOLANT, THE CONTACT NOTICED ABNORMAL COLORED COOLANT. THE VEHICLE WAS TAKEN TO THE DEALER TO GET A COOLANT FLUSH WHERE IT WAS DIAGNOSED THAT THERE WAS CASTING SAND IN THE COOLANT. THE VEHICLE WAS REPAIRED; HOWEVER, UPON RETURNING THE VEHICLE HOME, THE CONTACT INSPECTED THE COOLANT SYSTEM AND NOTICED THAT IT HAD BEEN CONTAMINATED BY SAND PARTICLES. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 28,000....UPDATED 03/08/17 *BF"

- NHSTA Complaint on January 02, 2017 for a 2012 Wrangler "FROM: CUSTOMER VEHICLE: 2012 JEEP WRANGLER SPORT, PURCHASED NEW IN 2012. REFERENCE: PROBLEMS IN HEATING SYSTEM TO WHOM IT MAY CONCERN, I PURCHASED A NEW 2012 JEEP WRANGLER SPORT FROM HENDRICK CHRYSLER JEEP IN FAYETTEVILLE, NC. FOURTEEN MONTHS LATER, I MOVED TO FLORIDA, WHERE THERE WAS NO NEED TO USE THE HEATER. UPON MY RETURN TO NORTH CAROLINA IN THE WINTER OF 2014, I NOTICED THAT HEATER ON THE DRIVER'S SIDE WAS NOT AS WARM AS THE PASSENGER'S SIDE. THE FOLLOWING WINTER, THE HEAT ON THE DRIVER'S SIDE FADED TO A POINT WHERE IT WAS BARELY WORKING. AFTER RESEARCHING THE ISSUE AND SPEAKING WITH A REPRESENTATIVE AT HENDRICK JEEP

SERVICE CENTER, I LEARNED THAT THE HEATER CORE WAS LIKELY THE PROBLEM AND THAT I WOULD NEED TO FLUSH THE HEATER CORE. IN JANUARY 2015, I TOOK MY JEEP TO A PRIVATE MECHANIC TO HAVE THE HEATER CORE FLUSHED, WHICH FIXED THE PROBLEM FOR A SHORT TIME. RESEARCH ONLINE AMONG JEEP OWNERS OF MY MODEL AND YEAR REVEALED THAT THE LONG-TERM SOLUTION IS A NEW RADIATOR AND HEATER CORE (NEITHER OF WHICH ARE UNDER WARRANTY OR UNDER RECALL). THE POOR CLEANING AT THE TIME OF MANUFACTURING HAS CAUSED THE CASTING OF SAND IN THE HEATER CORE AND RADIATOR, RESULTING BUILD UP THAT BLOCKS HEAT. NOW, IN WINTER OF 2016, MY HEATER DOES NOT WORK. I CANNOT FIND A RECALL OR A REBATE FOR THE MORE THAN $2,400 DEALER ESTIMATE I RECEIVED TO REPLACE MY HEATER CORE AND RADIATOR. I FOUND A CHRYSLER STAR CASE (SEE ATTACHMENT) THAT GIVES STEPS TO FIX THE PROBLEM WITHOUT ACKNOWLEDGING ITS ORIGINS IN MANUFACTURING. I HAVE EMAILED CHRYSLER WITH A REQUEST FOR SUPPORT, TO NO AVAIL. GIVEN THAT THIS PROBLEM IS SO WIDESPREAD AND CONSISTANT AMONG JEEP OWNERS OF MY MODEL AND YEAR, I WANTED TO SHARE THE CASE WITH THE RECALL AGENCY, ALTHOUGH I KNOW THIS IS NOT A DIRECT "SAFETY ISSUE.""

- NHSTA Complaint on December 12, 2016 for a 2011 Wrangler-"THE HEATER IN MY JEEP HAS NEVER WORKED SINCE WE BOUGHT IT! THE DRIVER SIDE ESPECIALLY! WE TOOK IT BACK WHERE WE BOUGHT IT AND THEY SAID THE VENT WAS STUCK AND IT JUST CONTINUES TO GET WORSE NOW ITS FREEZING. ONLINE THE INTERNET IS BLOWING UP W/ PEOPLE W/ THE SAME ISSUES WITH THESE. VEHICLES. WHY IS THERE NOT A RECALL? THIS SHOULD BE A CLASS ACTION LAWSUITE IF YOU DO NOT TAKE CARE OF THIS ASAP!"

- NHSTA Complaint on August 16, 2017 for a 2013 Wrangler HAVING PROBLEMS WITH MY HEATER CORE AND RADIATOR BECOMING CLOGGED I HAVE HAD THEM BOTH FLUSHED BY THE DEALERSHIP SEVERAL TIMES AND THEY STILL CLOG CAUSING HAZARDOUS DRIVING IN THE WINTER TIME WITH NO DEFROSTERS OR HEAT TO SAFELY DRIVE TO WORK

- NHSTA Complaint on August 16, 2017 for a 2013 Wrangler-"TL* THE CONTACT OWNS A 2012 JEEP WRANGLER. THE CONTACT STATED THAT THE COOLING SYSTEM STOPPED WORKING AND THE CHECK ENGINE LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO A LOCAL DEALER WHERE IT WAS DIAGNOSED THAT THERE WAS CASTING SAND IN THE COOLING SYSTEM, WHICH

CLOGGED UP THE RADIATOR, THE WATER PUMP, OIL COOLER, HEATER CORE, AND THE COOLING PART OF THE ENGINE. THE DEALER STATED THAT ALL THE CLOGGED PARTS NEEDED TO BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE AND STATED THAT THE PARTS WERE NOT COVERED BY THE WARRANTY AND THAT THERE WAS NO RECALL. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 62,000."

- NHSTA Complaint on March 03, 2016 for a 2012 Wrangler -"I TOOK MY 2012 JEEP INTO A DEALER SPIRIT DODGE IN SWEDESBORO NJ 08085 SATURDAY 2/27/16 MY COMPLAINT WAS NO HEAT. I WAS TOLD IT NEEDS A HEATER CORE A RADIATOR, AND TRANS COOLER. AND THAT MY EASY CARE EXTENDED WARRANTY DID NOT COVER IT EVEN THOUGH IT SAYS IT COVERS HEAT. MY EASY CARE CONTRACT NUMBER IS EGTK886782. MY JEEP HAS 52000 MILES. THEY SAID IT HAS SLUDGE IN THE SYSTEM. NOW MY SYSTEM IS NOT SCHUELDED TO BE CLEANED FLUSHED TILL 60 MONTH. SO IT FAILED BEFORE THE TIME. I WAS TOLD IT'S A KNOW PROBLEM BUT THEY HAVE NOT RECALLED THEM. I BOUGHT THE JEEP AT VANN DODGE IN VINELAND NJ. SO I REALLY FEEL CHEATED. I HAVE HAD NO HEAT FOR A WHILE BUT I DIDN'T REPORT RIGHT AWAY"

- NHSTA Complaint on May 05, 2015 for a 2012 Wrangler –"I HAVE A 2012 JEEP WRANGLER UNLIMITED WITH 40K MILES. AROUND 15K MILES, I STARTED EXPERIENCING ISSUES WITH THE DRIVER SIDE AND FRONT WINDSHIELD HEATING/DEFROSTING NOT WORKING. HEATING WORKS ON THE PASSENGER SIDE, BUT NOT ON THE DRIVER''S SIDE SEATING OR WINDSHIELD AREAS. THIS ISSUE CREATES A COMFORT PROBLEM DURING COLD DAYS DUE TO NO HEAT ON THE DRIVER'S SIDE BUT MORE IMPORTANTLY, CREATES A SAFETY ISSUE BECAUSE THE FRONT WINDSHIELD DOES NOT DEFROST PROPERLY WITHOUT SUFFICIENT HEAT, CREATING UNSAFE DRIVING SCENARIOS. THIS ISSUE WAS INTERMITTENT AT FIRST, BUT OVER THE PAST 20K MILES HAS BECOME A FREQUENT COMFORT AND SAFETY ISSUE. THIS DEFECT/ISSUE/DESIGN FLAW IS A KNOWN PROBLEM WITH THE CURRENT WRANGLER UNLIMITED AS A NUMBER OF OTHERS I KNOW WITH THE SAME VEHICLE EXPERIENCE THIS ISSUE AND YOU CAN FIND ENDLESS COMPLAINTS OF THE ISSUE ON LINE. MY DEALER ALSO EXPLAINED THEY RECEIVE FREQUENT COMPLAINTS FOR THIS PROBLEM. I BROUGHT MY JEEP TO THE DEALERSHIP. THEY EXPLAINED I NEED THE HEATING CORE REPLACED, AND DUE TO ITS LOCATION BEHIND THE DASHBOARD WILL COST ME $1000+ TO REPAIR, PRIMARILY DUE TO THE LABOR REQUIRED TO PULL OFF THE DASHBOARD

AND OTHER CAR PARTS TO REACH AND REPLACE THE HEATING CORE. THIS ISSUE SHOULD BE A RECOGNIZED SAFETY RECALL OR SERVICE BULLETIN BY JEEP/CHRYSLER WITH NO OUT OF POCKET REPAIR EXPENSE FOR THE VEHICLE OWNERS WHO EXPECT TO RECEIVE SAFE, HIGH QUALITY, WELL DESIGNED PRODUCTS FROM JEEP/CHRYSLER."

- NHSTA Complaint on February 02, 2015 for a 2012 Wrangler-"VEHICLE HAS NO HEAT ON DRIVER SIDE VENT AND FLOOR VENTS, COLD AIR COMES OUT AS IF THE A/C IS ON. AS TIME HAS PASSED COOL AIR ON FRONT WINDOW DEFROSTER AS WELL AS CENTER AND PASSENGER VENTS. VEHICLE IS WARMED UP WHEN TRYING TO TURN HEAT ON WITH NO POSITIVE RESULTS. ONLINE JEEP FORUMS LIST THIS AS A PROBLEM TO JEEP WRANGLERS. DEALERSHIP STATED THEY ARE UNAWARE OF THIS PROBLEM. THIS IS A SAFETY ISSUE TO DEFROST WINDOWS FOR VISIBILITY, AND SHOULD BE A RECALL. VEHICLE IS ALMOST 3 YEARS OLD. *TR"

- NHSTA Complaint on October 21, 2015 for a 2012 Wrangler-"MY CAR WAS MANUFACTURED WRONG... MY ENGINE BLOCK IS CASTING SAND INTO MY COOLANT SYSTEM WHICH THEN BLOWS OUT MY HEATER CORE AND RADIATOR. I HAVE SPENT 5 MONTHS UNDER WARRENTY TRYING TO FIX WITH ISSUE BUT THE JEEP DEALER AND CHRYSLER GIVE ME THE RUN AROUND. I WAS TRYING TO GET THIS FIX UNDER WARRENTY BUT ALL THE RUN AROUND I GOT FROM THE DEALERS HAS CAUSED MY WARRANTY TO EXPIRE WITH NO FIX. I THINK I HAVE BOUGHT A LAMON OF A CAR I ONLY HAVE 14K MILES , MY ISSUE STARTED AT 7K MILES. NOW IT IS WINTER TIME AND IN DRIVING MY CAR WITH NO HEAT. I HAVE A NEW BORN BABY ON THE WAY WHO WILL GET SICK INSIDE MY CAR. JEEP DOES NOT WANT TO COVER THE COST OF MY REPAIRS TO REPLACE THE HEATER CORE AND RADIATOR ALSO A COMPLETE FLUSH OF THIS SAND COMING FROM THE ENGINE. THIS IS A HAZARD FOR ME AND MY BABY TO DRIVE AROUND IN THIS COLD VEHICLE . THIS IS A KNOWN PROBLEM BUT JEEP\CHRYSLER IS TRYING THEIR BEST TO KEEP THIS QUIET. ILL BE TRYING TO CONTACT A LAWYER SOON OR MAYBE A NEWS STATION."

- NHSTA Complaint on April 10, 2015 for a 2012 Wrangler-"AT THE BEGINNING OF WINTER I NOTICE THE DEFROST/HEAT IN THE JEEP WAS NOT PUTTING OUT A LOT OF HEAT. IT WOULD BARELY DEFROST THE WINDSHIELD. WITH THE FRIGID WEATHER WE HAVE HAD, I JUST HAD IT CHECKED. I WAS TOLD THE HEATER CORE, AND THE RADIATOR WOULD NEED CHANGED BECAUSE THEY WERE PLUGGED. I FEEL SORRY FOR ANYONE THAT OWNS

A CHRYSLER PRODUCT. THIS STILL DOES NOT RUN RIGHT AFTER THE HEAD WAS CHANGED, NO DUMMY LIGHT COMES ON, SO NONE OF THE MECHANICS WILL BELIEVE ME THAT IT IS NOT RIGHT. AS YOU CAN SEE BY THE MILEAGE IT IS OUT OF WARRANTY, THE ISSUES STARTED RIGHT AFTER I BOUGHT IT. IT IS NOT THE DEALERSHIPS FAULT, IT IS THE COMPANY. DO SOMETHING TO GET THE ISSUES FIXED! *TR."

- NHSTA Complaint on December 03, 2014 for a 2012 Wrangler-"VEHICLE STOPPED GETTING HEAT FROM ALL VENTS ON DRIVERS SIDE, INCLUDING DEFROSTER AND ONLY LUKE WARM HEAT ON THE PASSENGER SIDE. ALL REGULAR MAINTENANCE HAD BEEN PERFORMED ON THE VEHICLE. DEALER SAYS RADIATOR AND HEATER CORE NEED TO BE REPLACED AS THEY ARE FILLED WITH 'SLUDGE'. A LITTLE RESEARCH ONLINE AND THIS SEEMS TO BE AN ALL TO COMMON ISSUE WITH THESE JEEPS AND CHRYSLER HAS GIVEN NO ANSWER AS TO THE CAUSE. WHILE NOT HAVING HEAT IS INCONVENIENT, NOT BEING ABLE TO DEFROST THE WINDSHIELD IS A SAFETY HAZARD. THEY ARE CURRENTLY FIGHTING ME ON PAYING FOR THIS AS THE VEHICLE IS JUST OUT OF WARRANTY. THIS IS AN ISSUE CHRYSLER IS FULLY AWARE OF AND HAS DONE NOTHING TO FIX! FURTHER INVESTIGATING HAS SHOWN THAT IGNORING THIS PROBLEM AND NOT REMOVING THIS SLUDGE COULD EVENTUALLY LEAD TO ENGINE FAILURE. *JS"

- NHSTA Complaint on January 24, 2014 for a 2012 Wrangler-"DRIVING & NOTICE THAT WINDOW STARTED TO FROST UP, AT THE SAME TIME NOTICE THAT THE HEAT WAS NOT GETTING WARM AFTER DRIVING FOR OVER 20 MINS. TURNED THE DEFROST ON AND IT STARTED TO FROST MORE, PUT MY HAND TO THE BLOWERS & NOTICE THAT IT WAS BLOWING COOL AIR. DOUBLE CHECKED THAT I HAD THE HEAT ON AND PUT IT TO HIGH AND IT CONTINUED TO BLOW COOL AIR, REACHED OVER TO THE PASSENGER SIDE AND IT WAS BLOWING WARM AIR. MADE AN APPOINTMENT TOOK MY VEHICLE IN AS IT ALREADY HAD A RECALL ON IT FOR SOMETHING ELSE EXPLAIN TO THEM WHAT WAS GOING ON WITH THE HEATER, THEY SAID THAT THE PART FOR MY HEATER WOULD TAKE 2 DAYS TO GET IN & THEY WOULD CALL. ONE WEEK LATER HAD NOT HEARD ANYTHING, WENT BACK TO THE JEEP DEALERSHIP(COLORADO CHRYSLER JEEP) SERVICE & ASKED ABOUT THE PART, WAS TOLD THAT IT WAS NOTHING PUT IN OR SHOWN ABOUT MY COMPLAINT ABOUT MY HEATER.SET R ANOTHER APPOINTMENT TO BRING MY JEEP IN TO HAVE THE HEATER REPAIRED & WAS TOLD IT WOULD TAKE 4 HOURS, AFTER BEING THERE FOR OVER AN HOUR THEY SAID IT WAS GOING TO BE A 2 DAY REPAIR...IT WAS

A RECALL BUT NOT A RECALL & THAT THEY WOULD BE
REPLACING THE RADIATOR AND HEATER CORE. APPOINTMENT
FOR 1/3/14 AND WAS TOLD IT WOULD BE READY ON 1/6/ OR
1/7/14. MY JEEP WAS NOT READY UNTIL 1/22/14 AND WHEN I
PICKED IT UP ON 1/23/14 THEY TOLD ME THEY THE FLUSHED
HEATER CORE, RADIATOR AND OVERFLOW TANK...FLUSHED
ENTIRE SYSTEM FILLED AND BLEED SYSTEM WITH NEW
COOLANT AND CHECKED TEMP AT 155 DEGREES. THAT SHOULD
FIX IT AND IF IT DID NOT THEN THEY WOULD REPLACE THE
RADIATOR AND HEATER CORE. THEN GOT IN THE JEEP LET IT
RUN FOR OVER 8 MINS HEATER ON LEFT SIDE WAS STILLING
BLOWING COOL AND RIGHT WAS BLOWING WARM. TOOK OVER
18 MINS FOR THE LEFT SIDE TO BLOW WARM BUT WAS NOT AS
WARM AS RIGHT SIDE. TAKING JEEP TO DIFFERENT JEEP
DEALERSHIP SERVICE DEPARTMENT TOMORROW AS THE
SERVICE SIMPLY SHOW THAT THEY DID NOT DO THE JOB THEY
SHOULD HAVE. *TR"

### CHRYSLER'S EXPRESS WARRANTIES COVER THE DEFECT

30.     Chrysler provides warranties for the Class Vehicles that cover the Defect, including

(among others), a "New Vehicle Limited Warranty" that provides "bumper to bumper coverage

for 3 years or 36,000 miles"; and a "Powertrain Limited Warranty" that provides coverage for "5

years or 100,000 miles." Under these and other warranties, Chrysler promised to repair or replace

engine and other components arising from defects in materials or workmanship, including the

Defect, at no cost to Class members. Since the Defect consists of a chemical reaction between

coolant utilized by Chrysler and aluminum engine/Cooling System components within the Class

Vehicles, the Powertrain Limited Warranty covers the Defect.

31.     Chrysler's warranties appear in window labels on the vehicles, in the owner's

manuals and brochures, and on the company's websites.

### PLAINTIFFS' EXPERIENCES

**Chris Hanusek**

32.     On or about August 13, 2013, Chris Hanusek purchased a new 2013 Jeep Wrangler

Sport, VIN 1C4AJWAG1DL704275, for personal and family use from Royal Gate Dodge Chrysler

Jeep & Ram of Columbia, 500 Admiral Weinel Blvd., Columbia, IL 62236. Like all Chrysler

vehicles, Mr. Hanusek's Class Vehicle came with Chrysler's Limited Warranty and Powertrain Limited Warranty.

33.     Prior to purchasing his vehicle, Mr. Hanusek was not informed by Chrysler or its dealerships that the 2013 Jeep Wrangler he sought to purchase contained the Defect, nor could he have reasonably discovered this latent Cooling System defect before purchasing the vehicle.

34.     After purchasing his Class Vehicle, Mr. Hanusek performed normal and routine maintenance. At no point was Mr. Hanusek ever informed by Chrysler or its dealerships that his Class Vehicle contained the Defect.

35.     On or about November 19, 2016, with approximately 37,000 miles on the vehicle, Mr. Hanusek attempted to use the heat in his Class Vehicle, only to have it emit cool air from the driver's side of the vehicle despite the heat being set to the warmest setting. While this side continued emitting cool air, the vents on the passenger side of the vehicle emitted slightly warmer air that was insufficient to heat the entire vehicle. This condition continued to occur during the entire operation of the vehicle on that occasion and others going forward, leaving him without heat during winter months.

36.     Mr. Hanusek first learned from online Jeep owner forums that the symptoms and problems that he is experiencing with his vehicle are common in Jeep Wranglers. Upon information and belief, sludge has built up in the heater core of Mr. Hanusek's vehicle, leading to poor heater performance and indicating a manifestation of the Defect. Although he purchased his vehicle new, Chrysler has never informed him of the Defect and has never recalled his vehicle despite its knowledge of the common problem, as shown by Chrysler's Star Case reports.

37.     Today, Mr. Hanusek's Jeep has approximately 76,137 miles on it and continues to have Cooling System problems that indicate the manifestation of the Defect as describe herein. Mr. Hanusek did not receive the benefit of his bargain in that had he been advised of the Defect at

the point of sale, he either would not have purchased the vehicle or would have paid less for it than he did.

**Jesse Swafford**

38.    On March 15, 2017, Jesse Swafford purchased a used 2013 Jeep Wrangler, VIN 1C4GHWDG6DK535184, with approximately 70,740 miles for personal and family use from Auffenberg Ford North, 115 Regency Park, O'Fallon, IL 62269. Mr. Swafford purchased a five (5) year, 100,000 mile extended warranty for his vehicle as the initial Basic Limited Warranty coverage had expired.

39.    Prior to purchasing his vehicle, Mr. Swafford was not informed that the 2013 Jeep Wrangler he sought to purchase contained the Defect.

40.    Immediately following the purchase of his vehicle, with approximately 70,895 miles on his vehicle, Mr. Swafford attempted to utilize the heat in his class vehicle. However, his vehicle only emitted warm air from the passenger's side of the vehicle despite the heat being set to the warmest setting. The driver's side vents emitted only cool air.

41.    On or about November 10, 2017, with approximately 77,103 miles on his vehicle, Mr. Swafford took his class vehicle to Auffenberg Chrysler Dodge Jeep Ram ("Auffenberg Chrysler"), an authorized Jeep dealer, for an inspection and diagnosis regarding his Cooling System problems. He paid $150.00 for the diagnostic work. The Auffenberg Chrysler service department informed Mr. Swafford that the cause of the problem was that the heater core was clogged and would have to be replaced. Upon information and belief, sludge has built up in the heater core of Mr. Swafford's vehicle, leading to poor heater performance and indicating a manifestation of the Defect. Despite purchasing an extended warranty with his vehicle just months prior to this diagnosis, he was told by Auffenberg Chrysler that the necessary repairs would not be covered by his warranty.

42.    Mr. Swafford did not receive the benefit of his bargain in that had he been advised of the Defect at the point of sale, he either would not have purchased the vehicle or would have

paid less for it than he did. Further, Swafford will continue to have these problems with the Cooling System of his vehicle until all necessary repairs are completed.

**Brian Kochman**

43.     On or about February 1, 2013, Mr. Kochman purchased a certified pre-owned 2012 Jeep Wrangler Sahara Unlimited, VIN 1C4BJWEG7CL209351, for personal or family use for $32,000.00 from Sam Leman Chrysler Jeep Dodge RAM Bloomington, 1602 Commerce Pkwy, Bloomington, IL 61704. At the time of purchase, the 2012 Jeep Wrangler had approximately 29,000 miles on it. Like all Chrysler vehicles, Mr. Kochman's Class vehicle came with Chrysler's Limited Warranty and Powertrain Limited Warranty.  He also purchased an extended warranty to supplement that coverage from Advantage Preferred.  This warranty provided coverage up to eighty-four (84) months or seventy-five thousand (75,000) miles.

44.     Prior to his purchase of the vehicle, Mr. Kochman noticed during his test drive that the heat was significantly degraded. The dealership repaired the Cooling System by replacing the heater core, radiator, and radiator hoses in the vehicle. He was not told that this problem was the result of a known defect, nor was he told that the repair would only temporarily resolve the Cooling System problems.

45.     On or about January of 2016, with approximately 49,000 miles on his Class vehicle, Mr. Kochman began experiencing the same heat problem with his vehicle's heat that had been present before he purchased the vehicle. Specifically, the heat on the driver's side would emit only cold air, while the passenger side of his vehicle would emit only lukewarm air, despite being set to the warmest temperature.

46.     Mr. Kochman took his Class Vehicle into Sam Leman Chrysler Jeep Dodge Ram Bloomington and requested a radiator flush, but was told that a flush was not recommended, as it would not fix the issue. Instead, the dealership recommended a complete replacement of the heater core, along with its pump and hoses, a repair which was quoted at $3,200.00.  Although he had purchased an extended warranty with his vehicle, coverage for the repair was denied at this time. He was told that his claim was denied because the sludge and clogging was caused by casting sand

from the manufacturing process. Since the cost of the repairs were not covered under his warranty, Mr. Kochman declined the repairs at that time (January 2016).

47.    On or about December 29, 2016, Mr. Kochman took his Class Vehicle into MAAS Radiator, Inc. in Bloomington, Illinois where a heater core flush was performed.  The flush cost Mr. Kochman one hundred thirty dollars ($130) and temporarily restored heat to his vehicle.

48.    On or about November 29, 2017, after continuing to experience issues with his Cooling System, Mr. Kochman took his Class Vehicle back to Sam Leman Chrysler Jeep Dodge Ram Bloomington to have his heater core completely replaced.  Although Advantage Preferred denied coverage in late 2016, it covered all but the $100 deductible in November 2017. Mr. Kochman paid $100 for the second heater core replacement on his vehicle.

49.    Neither Chrysler nor the Chrysler dealership ever informed Mr. Kochman that the 2012 Jeep Wrangler contained the Defect, even though his purchase of the vehicle was contingent on the Cooling System repair and replacement of parts, the vehicle was sold as certified pre-owned, and Mr. Kochman sought repair of the vehicle's Defect on multiple occasions.

50.    Today, Mr. Kochman has approximately 56,820 miles on his 2013 Jeep Wrangler. Mr. Kochman has operated his vehicle for months at a time, including in sub-freezing conditions, inhibited by a lack of functioning heat and defrost. Mr. Kochman did not receive the benefit of his bargain. Had he been advised of the Defect prior to or at the point of sale, or had he been informed that the initial repair would only be a temporary fix, he would not have purchased the vehicle or would have paid less for it than he did.

## CLASS ALLEGATIONS

51.    At the time of Plaintiffs' and the Class Members' purchases, Chrysler failed to disclose the consumer complaints, malfunctions, safety hazards, and material facts related to the Class Vehicles' Defect and how it would cause harm to other vehicle components.

52.    Before Plaintiffs purchased their Class Vehicles, Plaintiffs were never informed of, nor were aware of, the Defect and how it affected Class Vehicles' components. The Defect was present in the Class Vehicles at the time Chrysler placed them into the stream of commerce.

53.     Chrysler was in a superior position to know the facts surrounding the Defect in the Class Vehicles and that the Defect is and was latent and not easily discoverable. However, instead of disclosing the material Defect to consumers and potential purchasers of the Class Vehicles, Chrysler omitted information about the Defect with the intent of selling its vehicles to unsuspecting consumers. Chrysler was under a continuing duty to consumers including but not limited to Plaintiffs to disclose the facts that it knew about the Defect as a safety hazard, despite the presence of any applicable warranty available to Plaintiffs. Plaintiffs and the Class relied upon Chrysler's representations about the safety and functionality of its vehicles when purchasing the Class Vehicles.

54.     Chrysler intentionally concealed the Defect—a material omission—from Plaintiffs, consumers and potential purchasers. Concealment or omission of a material fact in a transaction constitutes fraud, especially when the fact is known to the manufacturer and is not readily ascertainable to consumers despite ordinary diligence and reasonable investigation prior to purchase of a Class Vehicle.

55.     Chrysler neither discloses the Defect at the point of sale nor later when the Class Vehicles are brought to a dealership or service center when the problems resulting from the Defect are evident (i.e., sludge build-up and poor heater performance). As a result, unwitting consumers are forced to repeatedly pay for ineffective "repairs" including, but not limited to, flushing sludge from the heater core.

56.     Had Chrysler disclosed the Defect, Plaintiffs would not have purchased the Class Vehicle or would have paid significantly less for it. Plaintiffs were denied information about the Defect that was material to their purchase and willingness to use the Class Vehicle.

57.     Plaintiffs and Class Members experienced damage from the Defect within the warranty period on their vehicles. Plaintiffs and Class Members reasonably expected that any and all damage that resulted from the Defect would be covered under the warranty and that they would not be charged for such repairs.

58.    Chrysler has systematically denied warranty coverage with respect to the Defect. As a result of Chrysler's inaction and silence, consumers are unaware that they purchased or leased Class Vehicles that had the Defect at the point of sale, and continue to drive them in their defective and unsafe state. In addition, consumers who experience a manifestation of the Defect and bring their vehicles to a dealership for repairs are not told that the "repairs" they pay for are ineffective and will have to be repeated.

59.    Due to the Defect, the values of the Class Vehicles at the time of purchase or lease were less than the amounts Plaintiffs and Class Members paid.

60.    The Defect causes the Class Vehicles to lose value, including reducing trade-in and re-sale value.

61.    The Defect causes Class Members to incur repair costs, lose use and enjoyment of their Class Vehicles, and to suffer a loss of time and suffering the burden of arranging and obtaining repairs.

## PROPOSED CLASS

62.    Plaintiffs bring this case as a class action under Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3) on behalf of the following Class:

> *All persons who purchased or leased a 2012-2017 Chrysler Jeep Wrangler in the State of Illinois.*

## CLASS CERTIFICATION ALLEGATIONS

63.    **Numerosity**. The Class is comprised of hundreds of Class Vehicle owners within Illinois, making joinder difficult if not impossible.

64.    **Commonality**. Questions of law and fact exist that are common to all Class Members, and predominate over any questions that affect only individual Class Members, including (among others):

a.    Whether Class Vehicles suffer from the Defect;

b.    Whether the Defect causes damage to the heater core and other components of the Class Vehicles' Cooling System;

c.      Whether the Defect existed at the time the Class Vehicles entered the stream of commerce;

d.      Whether Chrysler knew or should have known about the Defect;

e.      Whether Chrysler failed to disclose Defect at the time that Class Members purchased the Class Vehicles or thereafter;

f.      Whether Chrysler breached its express warranties by failing to permanently repair or refusing to repair the Defect for Class Members;

g.      Whether Chrysler acted or refused to act on grounds generally applicable to the Class, thereby making the award of equitable relief appropriate to the Class as a whole;

h.      Whether Chrysler's conduct violates state law pursuant to Magnuson-Moss Warranty Act;

i.      Whether the Defect impairs the value of the Class Vehicles.

65.    **Typicality**. Plaintiffs' claims are typical of the claims of Class Members.

66.    **Adequacy**. Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

67.    **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Chrysler economically feasible. Even if Class Members themselves could afford individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defect, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By

contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

68. In the alternative, the proposed Class(es) may be certified because:

a. the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Chrysler;

b. the prosecution of individual actions could result in adjudications that, as a practical matter, would be dispositive of the interests of non-party Class Members, or which would substantially impair their ability to protect their interests; and

c. Chrysler acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

69. **Predominance**. This class action is appropriate for certification because questions of law and fact common to Class Members predominate over questions affecting only individual members.

<u>**TOLLING OF STATUTE OF LIMITATIONS**</u>

70. **Active Concealment Tolling.** Any statutes of limitations are tolled by Chrysler's knowing and active omission and concealment that the Class Vehicles suffered from a Defect. Chrysler had a duty to disclose this Defect and its consequent performance and safety problems to Plaintiff and Class Members because Chrysler had superior knowledge of this defect and the defect was neither known to, nor easily discoverable by, Plaintiffs and Class Members.

71. Despite its affirmative duty to disclose the nature and existence of this Defect, Chrysler kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claim. Chrysler kept Plaintiffs and Class Members ignorant of vital information essential

to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs or Class Members. The details of Chrysler's efforts to omit its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class Members. Plaintiffs could not reasonably have discovered the fact that the Class Vehicles suffered from a Defect.

72.     **Estoppel**. Chrysler was and is under a continuing duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Defect. At all relevant times, and continuing to this day, Chrysler knowingly, affirmatively, and actively misrepresented and omitted the true character, quality, and nature of the problems caused by this Defect. The details of Chrysler's knowledge and omissions are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs and Class Members reasonably relied upon Chrysler's knowing and/or omissions. Based on the foregoing, Chrysler is estopped from relying upon any statutes of limitation in defense of this action.

73.     **Equitable Tolling**. Chrysler took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the heating and cooling system problems caused by the Defect. The details of Chrysler's efforts to conceal the Defect are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Chrysler's failure to disclose and active concealment of the Defect amounts to bad faith and deception in and of itself. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

74.     Given Chrysler's active and knowing concealment of the Defect, equitable tolling of the statutes of limitations applicable to the causes of action brought in this case is appropriate.

75.     Plaintiffs and Class Members could not have reasonable discovered the true reasons for the Defect until the recent investigation which led to the filing of this Complaint.

## FIRST CAUSE OF ACTION

### Breach of Express Warranties

76.     Plaintiffs, individually and on behalf of the Class, incorporate all of the foregoing allegations into this cause of action.

77.     Chrysler expressly warranted that it would cover the cost of all parts and labor needed to repair any item on the vehicle that was defective in material, workmanship or factory preparation when it left the manufacturing plant.

78.     Chrysler materially breached its express warranties by manufacturing, selling, and leasing Jeeps that contained the Defect, which rendered the vehicles unsafe or unfit for use as warrantied.

79.     Chrysler was put on notice of the breach by Plaintiffs' efforts to get the vehicle repaired at its authorized dealerships.

80.     Chrysler's express warranty failed of its essential purpose because, despite multiple attempts to repair the Defect, it repeatedly manifests in the vehicles owned or leased by Plaintiffs and Class Members after the "repairs." In other words, flushing the sludge-like residue from the vehicles only temporarily reduces the manifestation of the Defect, but does not remediate the Defect on a permanent basis.

81.     As a result of Chrysler's breach of warranties, Class Members have sustained damages, including diminished value of their Class Vehicles.

82.     Chrysler's time limits on its warranties are unconscionable because Chrysler knew or had reason to know that Plaintiffs and Class Members might not experience or detect sludge-like build-up in the early life of the Jeep and, in many instances, detection of the Defect would only occur once the Cooling System stopped working properly after the warranty period had expired. And by making false and misleading representations about the nature of the Defect, Chrysler further prevented Class Members from timely exercising their rights under the warranties.

83.     Plaintiffs and Class Members are entitled to recover all damages as a result of said breach of warranties in an amount in excess of $5,000,000.00.

## SECOND CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

84.    Plaintiffs, individually and on behalf of the Class, incorporate all of the foregoing allegations into this cause of action.

85.    Under the Magnuson-Moss Warranty Act, Class members are "consumers," Chrysler is a "supplier" and "warrantor," and the Jeeps (and their defective Cooling Systems) are "consumer products."

86.    Under 15 U.S.C. § 2301(d)(1), the Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

87.    Chrysler's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

88.    Chrysler breached these warranties as described in more detail above. Without limitation, all Class Vehicles suffer from a common Defect that manifests in the Cooling System and is present at the point of sale.

89.    Under the Act, Chrysler was obligated to disclose to Class Members the known Defect within the Jeeps, and was obligated to repair or otherwise remedy the Defect.

90.    To the extent necessary, Plaintiffs and each Class Member have had sufficient direct dealings with Chrysler or its agents (including dealerships) to establish privity of contract between Chrysler, on the one hand, and Plaintiffs and each Class Member, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between Chrysler and its dealers, and specifically, of Chrysler's express and/or implied warranties. These dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

91.     Chrysler failed to meet its disclosure and remedy obligations, despite reasonable opportunity to do so.

92.     Chrysler's violation of the Act caused damage to Class Members and entitles them to statutory relief.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranties

93.     Plaintiffs, individually and on behalf of the Class, incorporate all of the foregoing allegations into this cause of action.

94.     Chrysler warrantied that the Jeeps were of merchantable quality and fit for their ordinary purpose. Chrysler warrantied that the Jeeps' primary components, including the Cooling System, would operate properly. Chrysler breached these implied warranties in that the Class Vehicles were not merchantable because they cannot be driven safely under all reasonably expected weather conditions and thus, in this condition are not reliable for transportation, and the Class Vehicles' Cooling Systems contained the Defect described herein, such that their heating, cooling, and defrosting mechanisms repeatedly failed to function properly, sometimes beginning early on in the vehicles' expected useful life.

95.     To the extent necessary, Plaintiffs and each Class Member have had sufficient direct dealings with Chrysler or its agents (including dealerships) to establish privity of contract between Chrysler, on the one hand, and Plaintiffs and each member of the Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each Class Member are intended third-party beneficiaries of contracts between Chrysler and its dealers, and specifically, of Chrysler's implied warranties. These dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

96.     As a result of Chrysler's breaches of implied warranties, Plaintiffs and Class Members have suffered damages.

## FOURTH CAUSE OF ACTION

### For Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.

97.     Plaintiffs, on behalf of the Class, incorporate all of the foregoing allegations into this cause of action.

98.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/2 provides the following:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

99.     As set forth herein Chrysler engaged in unfair or deceptive acts or practices through the sale of merchandise in trade or commerce.

100.     Plaintiffs and Class Members purchased the Class Vehicles primarily for personal, family, or household purposes.

101.     Chrysler violated the ICFDBPA by intentionally representing that the Class Vehicles, including but not limited to their Cooling Systems and related components, were free from defects and were in good, working condition at the point of sale when they were not.

102.     Chrysler's scheme and concealment of the true characteristics of the Defect were material to the Plaintiffs and Class Members. Had they known the truth, the Plaintiffs and Class Members would not have purchased or leased the Class Vehicle, or—if the Class Vehicles' true nature had been disclosed and mitigated, would have paid significantly less for them.

103.     The Class Members had no way of discerning that Chrysler's representations were false and misleading, or otherwise learning the material facts that Chrysler concealed or failed to

disclose about the Defect. Although the Defect was present at the point of sale, it was latent in nature. Thus, the Defect could not be ascertained by a reasonable person until it has sufficiently manifested through a malfunction in the Cooling System, as described in the Plaintiffs' and Class Members' experiences included herein.

104.    Chrysler had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair and deceptive practices under the ICFDBPA in the course of their business. Specifically, Chrysler owed the Plaintiffs and Class Members a duty to disclose all material facts concerning the Defect because Chrysler possessed exclusive knowledge. Chrysler intentionally concealed that knowledge from the Plaintiffs and Class Members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

105.    Chrysler's concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive, and fraudulent business practices within the meaning of the ICFDBPA.

106.    Chrysler's violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public. Chrysler's unlawful acts and practices complained of herein affect the public interest.

107.    As a result of Chrysler's statutory violations, Plaintiffs and Class Members sustained injuries and are entitled to relief under the Act. Plaintiffs and Class Members are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Illinois law, including but not limited to 815 ILCS 505/10a (a) and (c).

## PRAYER FOR RELIEF

Therefore, Plaintiffs seek judgment against Chrysler and relief as follows:

A.    An Order certifying this case as a Class Action;

B.    An Order appointing the Plaintiffs as the Class Representatives of the Class;

C.    An Order appointing Plaintiffs' counsel as Class Counsel;

D.    Damages and other relief under statutory or common law;

E.      Attorneys' fees and costs;

F.      Pre- and post-judgment interest;

G.      Declaratory, injunctive, and equitable relief; and

H.      Such other relief as is just and proper.


## JURY DEMAND

Plaintiffs, on behalf of themselves and the proposed Class, hereby demand a trial by jury as to all matters so triable.

This the 27th day of February, 2018.

Respectfully submitted,


By: s/ Eric S. Johnson

Eric S. Johnson
**SIMMONS HANLY CONROY LLC**
One Court Street
Alton, IL 62002
Tel. 618-259-2222
Fax: 618-259-2251
ejohnson@simmonsfirm.com

Gregory F. Coleman (*pro hac vice* pending)
Adam A. Edwards (*pro hac vice* pending)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

Mitchell M. Breit (*pro hac vice* pending)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, NY 10016

Daniel K. Bryson (*pro hac vice* pending)
John Hunter Bryson (*pro hac vice* pending)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com
hunter@wbmllp.com

Jack Landskroner (*pro hac vice* pending)
**LANDSKRONER GRIECO MERRIMAN LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: (216) 522-9000
Fax: (216) 522-9007
jack@lgmlegal.com

*Attorneys for Plaintiffs*