IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRIS HANUSEK, JESSE SWAFFORD, )
and BRIAN KOCHMAN, on behalf of )
themselves and all others similarly )
situated, )
)
          **Plaintiffs,** )
)
vs. )  Case No. 18-CV-509-NJR-GCS
)
FCA US LLC, )
)
          **Defendant.** )

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is Defendant FCA US LLC's Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. 18) and Plaintiffs' Motion for Leave to Amend (Doc. 22). For the reasons set forth below, the Court grants the Motion to Dismiss and denies as moot the Motion for Leave to Amend.

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Chris Hanusek, Jesse Swafford, and Thomas Stewart,[1] on behalf of themselves and a class of similarly situated persons, assert breach of warranty claims against Defendant FCA US LLC ("FCA") related to a defect in the engine of Jeep Wrangler vehicles that have the model years of 2012 through 2017 (Doc. 1, p. 1).[2] Specifically, Plaintiffs allege

---

[1] Thomas Stewart is not named in the original complaint, but Plaintiffs seek to add him as a plaintiff in the proposed amended complaint (*See* Doc. 22-1).
[2] On November 16, 2018, the parties filed a stipulation of dismissal seeking to voluntarily dismiss the claims of Brian Kochman. A plain reading of Federal Rule of Civil Procedure 41(a) suggests that dismissal under this rule should be used only to dismiss an entire action or the whole case. *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (Rule 41(a) is "limited to dismissal of an entire action" and Rule 15(a) is the proper vehicle for "adding or dropping parties and claims"). While the Court acknowledges the plain reading of the rule, it finds that dismissing this plaintiff, rather than ordering amendment of the complaint, is in the interest of judicial economy in this particular case. Thus, Brian Kochman is **TERMINATED** as a plaintiff to this action.

that the coolant that FCA used at the time of manufacture reacts with aluminum components in the engine resulting in the formation of sludge, which causes damage to cooling system components (*Id.*). Plaintiffs assert claims for breach of express warranties (count one), a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (count two), breach of implied warranties (count three), and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/1, *et seq.* (count four) (Doc. 1, p. 27-31).

Plaintiffs are residents of Illinois and owners of Jeep Wranglers manufactured between the years 2012 and 2017 (*see* Doc. 1, pp. 3-4, 18-20). Generally, Plaintiffs allege that their vehicles "suffer from a defect…in the engine's heating and cooling system…[consisting] of a reaction between the manufacture-installed coolant and the aluminum components in the engine, namely those comprising the Cooling System" (Doc. 1, p. 1). Further, they allege that the defect "can be exacerbated by the presence of flux left over from fabrication of the radiator…[and] the [d]efect results in the build-up of sludge within the heater core and other components of the Cooling System" (Doc. 1, p. 1). Plaintiffs suggest that this build-up "causes damage to the heater core and other components of the Cooling System" and compromises various system functions (Doc. 1, p. 2). Eventually, the defect can cause a vehicle's "heating, cooling, and defrost functions [to] quit working properly or completely fail" (Doc. 1, p. 5). Such a failure, according to Plaintiffs, compromises the safety of their vehicles, especially when the cars are operated in excessive heat or freezing cold (*Id.*).

None of the Plaintiffs were made aware of the defect before purchasing their vehicles (*see* Doc. 1, p. 18-20). On the other hand, Plaintiffs allege that FCA knew of the defect as early as December 12, 2012, when it issued a STAR Case Report ("STAR Report") describing how

to diagnose and repair vehicles manifesting "Poor Heater System Performance" and circulated this report to its authorized dealerships and service centers (Doc. 1, p. 5-8). Specifically, the STAR Report notes that "[s]ludge may build up and restrict coolant flow in the heater core" (Doc. 1, p. 7). The repair procedure prescribed is as follows: first, "[f]lush cooling system;" second, replace the radiator, heater core, radiator cap, and engine oil cooler; and finally, "[r]efill the cooling system with the appropriate coolant and perform verification" (Doc. 1, p. 8). In addition to the STAR Report, Plaintiffs allege that FCA became aware of the defect via the numerous complaints submitted to the National Highway Safety and Traffic Association ("NHSTA")—which FCA "monitors regularly" (Doc. 1, p. 11)—or posted on websites online (*see* Doc. 1, p. 8-17).

At the time of purchase, the vehicles at issue in this case were protected by one or more of FCA's express warranties, including the New Vehicle Limited Warranty and/or the Powertrain Limited Warranty (Doc. 1, p. 17).

Plaintiff Chris Hanusek purchased a new 2013 Jeep Wrangler Sport from an authorized dealer on or around August 13, 2013 (Doc. 1, p. 17). More than three years later— when the odometer read approximately 37,000 miles—Hanusek noticed that the heat in his vehicle was not working properly (Doc. 1, p. 18). "This condition continued to occur during the entire operation of the vehicle on that occasion and others…leaving him without heat during winter months" (*Id.*). Hanusek's vehicle now has approximately 79,754 miles on it and "continues to have Cooling System problems" (Doc. 22-2, p. 19). Neither the complaint nor the proposed amended complaint contains any allegation that Hanusek has brought his car to a dealership or service center for repairs.

On March 15, 2017, Plaintiff Jesse Swafford purchased a used 2013 Jeep Wrangler (*see*

Doc. 1, p. 19). Because the car was no longer covered by the Basic Limited Warranty at the time of purchase, Swafford elected to pay to have his car protected by a five-year, 100,000 mile extended warranty (Doc. 1, p. 19). After the alleged defect manifested, and he was unable to properly heat his vehicle, Swafford brought his vehicle to an authorized Jeep dealer for repairs (*Id.*). The diagnostic examination conducted there revealed that "the cause of the problem was that the heater core was clogged and would have to be replaced" (*Id.*). Based on this information, the dealership subsequently informed him that the extended warranty did not cover this repair (*Id.*). Swafford was charged $150 for the diagnostic examination (*Id.*).

The proposed amended complaint alleges that, on August 5, 2017, Plaintiff Thomas Stewart (who seeks to be added as a named plaintiff) purchased a 2014 Jeep Wrangler Unlimited Sahara from Champaign Chrysler Dodge Jeep Ram (Doc. 22-2, p. 22). Stewart's vehicle came with Chrysler's Limited Warranty and Powertrain Limited Warranty (*Id.*). He also purchased an extended third-party warranty that lasted 7 years or 50,000 miles, whichever came first, because his vehicle had approximately 85,981 miles on it at the time of purchase (Doc. 22-2, p. 22-23). Once he started experiencing issues with the heat in his vehicle in August 2017, the dealership performed a repair that did not fix the issue (Doc. 22-2, p. 23). He brought the vehicle back in late August 2017, and the dealer replaced the radiator (*Id.*). In late December 2017, he once against experienced heating issues, and he was told that the heater core needed to be replaced (*Id.*). Stewart ended up paying $1,288.64 for replacement of the heater core (*Id.*). Stewart continues to experience heating issues (Doc. 22-2, p. 24).

On February 27, 2018, this lawsuit was filed (Doc. 1). On April 24, 2018, FCA moved to dismiss the case (Doc. 18). Instead of filing a response in opposition to FCA's motion to dismiss, on May 16, 2018, Plaintiffs filed an amended complaint (Doc. 20). A few days later,

on May 21, 2018, FCA moved to strike the amended complaint (Doc. 21). On May 25, 2018, Plaintiffs then moved to amend their original complaint (Doc. 22) and moved to strike FCA's motion to strike (Doc. 23). On May 31, 2018, Magistrate Judge Stephen Williams (who recently retired) found the amended complaint to be moot and ordered it stricken (Doc. 27). He also found the motions to strike to be moot (*Id.*).

As of this time, a motion to dismiss was pending—to which no response had been filed—other than Plaintiffs' motion for leave to amend the complaint. FCA filed a response in opposition to Plaintiffs' motion for leave to amend the complaint, however, arguing that Plaintiffs' proposed amended complaint failed to cure the deficiencies raised in its motion to dismiss. Thus, the Court decided to withhold ruling as to whether the amended complaint would be allowed until after the Plaintiffs responded to FCA's motion to dismiss, and the Court *sua sponte* granted Plaintiffs additional time to respond to the arguments raised in the motion. Plaintiffs filed a response to FCA's motion to dismiss on June 14, 2018 (Doc. 30).

### LEGAL STANDARD

FCA moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion seeking dismissal under Rule 12(b)(1), a plaintiff must "clearly allege facts demonstrating each element" required to establish he has standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. The burden of establishing these three elements falls on the party invoking the court's jurisdiction. *Id.* Notably, "[t]hat a suit may be a class action ... adds nothing to the question of standing, for

even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

## ANALYSIS

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

FCA argues that Plaintiffs lack standing because they have failed to allege sufficient facts showing their claimed injury is "fairly traceable to [FCA's] challenged conduct." In support, FCA argues that Plaintiffs do not allege facts showing that their own vehicles have ever been found to have developed a sludge buildup as the result of coolant reacting with aluminum components.

Plaintiffs' complaint and proposed amended complaint present both general and plaintiff-specific allegations. The general allegations provided are (1) that the engines in the Class Vehicles "contain aluminum components" (Doc. 1, p. 5; Doc. 22-2, p. 6), (2) that FCA "specified the engine fluids to be used and installed in [the engines], including the type of coolant to be used" (Doc. 1, p. 5; Doc. 22-2, p. 6), (3) that "prior to the sale of each Class Vehicle, the fluids chosen and specified by [FCA] were installed" (Doc. 1, p. 5; Doc. 22-2, p. 6), (4) that "a chemical reaction occurs when the factory installed coolant chosen by Chrysler reacts with the Class Vehicles' aluminum engine and Cooling System components" (Doc. 1, p. 5; Doc. 22-2, p. 6), and (5) that "[t]he result of the chemical reaction is the formation of a sludge that damages key components of the Cooling system, including especially the heater core, [and causes them] to fail" (Doc. 1, p. 5; Doc. 22-2, p.6).

According to the allegations of the complaint and proposed amended complaint, Plaintiffs Hanusek, Swafford, and Stewart purchased a Class Vehicle manufactured by FCA (Doc. 1, p. 17, 19; Doc. 22-2, p. 18, 20, 21, 22). Each of these Class Vehicles eventually came to suffer the problem described as a result of the defect in the complaint and proposed amended complaint (*i.e.* the car's heating function emitted only tepid, insufficiently heated air) (Doc. 1,

p. 18, 19; Doc. 22-2, p. 19, 20, 21, 23). Specifically, Plaintiffs Hanusek and Swafford allege that the engines in their Class Vehicles contained "sludge" (Doc. 1, p. 18, 19; Doc. 22-2, p. 19, 20, 22). Stewart made no such allegation (*see* Doc. 22-2, p. 22-24).

The Court finds that Hanusek and Swafford have alleged enough general factual information to establish a sufficiently strong nexus between the injury they suffered and FCA's conduct. *See, e.g., Williams v. FCA US, LLC*, No. 17-CV-00844-W-DW, 2018 WL 3973075, at *5-6 (W.D. Mo. Apr. 16, 2018) (finding the "fairly traceable" requirement was satisfied by a virtually identical complaint, alleging that the injury was the reactive coolant used by the engine manufacturer). Although the proposed amended complaint contains no allegation that "sludge" was found in Stewart's vehicle, it is enough to give the Court jurisdiction over the case that Hanusek and Swafford have standing. *See Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672-676-77 (7th Cir. 2009) (noting that it is sufficient in a class action to have only "one named plaintiff with standing, [because] one is all that is necessary"); *see also Price v. Pierce,* 823 F.3d 1114, 1118 (7th Cir. 1987) ("[I]t is enough, to give us jurisdiction over the case, if one of the plaintiffs has standing."); *see also In re Supervalu, Inc.*, 870 F.3d 763, 767 (8th Cir. 2017) (citing *Horne v. Flores*, 557 U.S. 433, 446 (2009) ("[a] putative class action can proceed as long as one named plaintiff has standing."); *see also Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977)). Thus, the Court denies FCA's motion to dismiss pursuant to Rule 12(b)(1).

II.     **Motion to Dismiss Pursuant to Rule 12(b)(2)**

The first argument the Court takes up is pre-suit notice. FCA argues that Plaintiffs' warranty claims must be dismissed because Plaintiffs did not provide FCA with requisite notice of the alleged breach of warranty before filing the suit.

The Uniform Commercial Code, as adopted by Illinois, requires that a plaintiff provide the defendant with notice of the breach of warranty "within a reasonable time after [the plaintiff] discovers or should have discovered any breach" or else the plaintiff is "barred from any remedy." 810 ILCS 5/2-607(3)(a) (2018). Courts have applied this provision to require that a plaintiff give the defendant pre-suit notice before asserting a breach of warranty claim in court. *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation,* 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) (citing *Connick v. Suzuki Motor Corp.*, 675 N.E.2d 584, 589 (Ill. 1996)); *see also Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003) ("[Section 2-607(3)(a) requires a plaintiff to notify the defendant of the claimed deficiency in its product prior to filing suit."). Similarly, the MMWA provides that the defendant must be given "a reasonable opportunity to cure." 15 U.S.C. § 2310(2). "Courts have applied the same U.C.C. pre-suit notice requirements to reject breach of warranty claims brought under the MMWA." *See In re Rust-Oleum*, 155 at 799; *see also Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (1997).

The pre-suit notice requirement is supported by several justifications: to protect a seller's ability to investigate a breach and gather evidence, to allow the seller to correct the defect or minimize damages, to allow the seller to prepare for litigation, to prevent stale claims, and to encourage pre-suit settlement negotiations. *See In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007); *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015); *Whitwell v. Wal-Mart Stores, Inc.*, Civil No. 09-513-GPM, 2009 WL 4894575, at *4 (S.D. Ill. Dec. 11, 2009); *Baldwin v. Star Scientific, Inc.*, No. 14 C 588, 2016 WL 397290, at *10 (N.D. Ill. Feb. 2, 2016). "Pre-suit notice is an essential element of a breach of warranty claim, and the absence of such notice results in dismissal." *Hedges v. Earth*, No. 14 C 9858,

2015 WL 1843029, at *1 (N.D. Ill. Apr. 21, 2015) (citing *Whitwell*, 2009 WL 4894575, at *4-6).

Plaintiffs first argue that FCA was put on notice for purposes of the Illinois Express Warranty statute when Plaintiffs "took their vehicles in to be serviced at authorized dealerships after the Defect manifested" (Doc. 30, p. 10; *see also* Doc. 22-2, ¶¶ 35, 42, 45-46, 54). Plaintiffs cite to the Northern District of Illinois case of *Zingerman v. Nissan* for the proposition that presenting a vehicle for repair of a defect at an authorized dealership of an automobile manufacturer provides sufficient notice to the manufacturer for purposes of warranty claims (Doc. 30, p. 10). *See Zingerman v. Nissan N. Am., Inc.*, No. 14 C 7835, 2015 WL 1840952, at *5 (N.D. Ill. Apr. 20, 2015).

In *Zingerman*, the plaintiff alleged that the defendant had "represented that owners and lessees of Q50s would be able to access the Advertised Apps through InTouch, would be able to access their emails through InTouch, and would be able to access a calendar through InTouch." *Id.* at *3. When the plaintiff was unable to access any of the "Advertised Apps" through InTouch, he "attempted to obtain the upgrade that supposedly corrected the InTouch system from an Infiniti dealership but [] the dealership was unaware of the upgrade." *Id.* at *5. The court found that this satisfied the notice requirement.

The facts of this case differ significantly from the facts of *Zingerman*. In *Zingerman*, the allegations of the complaint demonstrated that the plaintiff was able to give the dealership *specific information* about both the defect in his car and the express warranty that was allegedly being breached. Here, however, the complaint does not allege that the dealership was made aware of such specific information regarding the defect. All the allegations show is that the dealership was made aware of the presence of sludge in the vehicle and/or the damage to the heater core and other components (Doc. 1, p. 19; Doc. 22-2, p. 20, 23). The defect alleged

in the complaint is "a reaction between the manufacturer-installed coolant and the aluminum components of the engine, namely those comprising the Cooling System." (Doc. 1, p. 1). The sludge, which leads to the breakdown of the heater core and other components, is alleged to form *as a result of* this defect (*Id*.). Thus, the Court finds this case to be distinguishable from *Zingerman*, because neither the complaint nor the proposed amended complaint alleges that the dealership was aware of the particular defect forming the basis of this breach of warranty claim.

Plaintiffs further argue that FCA had the requisite "actual knowledge" necessary to overcome the pre-suit notice requirement. In *Connick v. Suzuki Motor Corp.*, the Supreme Court of Illinois acknowledged this exception to the pre-suit notice requirement. *Connick*, 675 N.E.2d at 589. No notice (or allegation thereof) is required when "(1) the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Id.* (internal citations omitted).[3] Importantly, the actual knowledge exception is not available to plaintiffs when the seller knows only the concerns of third parties; instead, the seller must have actual knowledge of the litigating buyer's problem with the purchased product. *Id.* at 590 ("[E]ven if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer."); *see also Anthony v. Country Life Mfg., LLC,* 70 F. App'x 379, 384 (7th Cir. 2003) ("The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better

---

[3] According to the discussion in *Connick*, "[o]nly a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Id.* at 591; *accord Whitwell*, 2009 WL 4894575, at *6 n.4.

than, the buyer, but of buyer's claim that they constitute a breach."); *see also Hedges v. Earth, Inc.*, 2015 WL 1843029, at *2 (N.D. Ill. Apr. 21, 2015) ("[E]ven though there are public reports about a general problem with a product line, a seller has no way of knowing whether a particular product actually suffers from the defect until the buyer provides notice of the alleged defect.").

Plaintiffs allege that FCA had access to "numerous complaints [describing the defect that] have been filed with the National Highway Traffic Safety Administration" and posted on the Internet, but this demonstrates only that FCA was aware of third-party complaints (Doc. 1, p. 8-17; Doc. 22-2, p. 9-18). Additionally, none of these complaints mention FCA's use of a coolant that negatively reacts with aluminum components.

Plaintiffs also allege that FCA's actual knowledge is demonstrated when FCA issued a STAR Report to dealerships acknowledging the existence of the defect and describing its manifestation (Doc. 1, p. 5-8; Doc. 22-2, p. 6-8). Although the STAR report issued by FCA suggests that it was aware that "[s]ludge may build up and restrict coolant flow in the heater core" causing "Poor Heater System Performance," the report does not suggest that FCA knew that the sludge resulted from the alleged defect—namely, the use of a coolant during the engine's manufacture that negatively reacts with the aluminum components (Doc. 1, p. 7; Doc. 22-2, p. 7). To the contrary, the STAR report recommends that, following the system's repair, one should "[r]efill the cooling system with the appropriate coolant and perform verification" (*see* Doc. 1, p. 8; Doc. 22-2, p. 9). It seems likely that FCA would have been more specific about which coolants to use (or not to use) if it had "actual knowledge of the claimed breach of warranty" at the time of the report.

In making this argument, Plaintiffs rely almost entirely on *In re Rust-Oleum*.

Unfortunately, Plaintiffs' reliance on this case is inapposite. In that case, a district court in the Northern District of Illinois found a number of different allegations within the complaint to be "sufficient at this early stage to allege an exception to pre-suit notice based on [the defendant's] knowledge of the issues with the [] products sold to plaintiffs and the putative class." *In re Rust-Oleum Restore Mktg., Sales Practices, and Prods. Liability Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. Jan. 7, 2016). But the complaint in *In re Rust-Oleum* contained a greater number of factual allegations than exist in the complaint and proposed amended complaint here. *See In re Rust-Oleum*, 155 F. Supp. 3d at 800.

Additionally, the alleged defect in *In re Rust-Oleum* was that the paint bubbled, flaked, chipped, or degraded prematurely. The plaintiffs alleged that they specifically "notified [the defendant] that [the paint] was prematurely failing." *Id*. The plaintiffs also alleged that the defendant had actual knowledge of the defect through, among other things, pre and post-sale audits, field testing, and numerous online complaints that the product peeled, cracked, and bubbled. *Id*. The plaintiff also alleged that the defendant "knew or should have known that the product would not meet the claims and promises and representations the company affirmatively made to consumers on product packaging, uniform brochures, online marketing, and through other advertisements." *Id.*

Here, neither the complaint nor proposed amended complaint alleges that FCA had actual knowledge of the claimed defect, *i.e.* FCA's use of a coolant that negatively reacts with aluminum components. Nowhere in the complaint or proposed amended complaint do Plaintiffs allege that FCA's knowledge of the sludge necessarily means FCA *also* had knowledge of a reaction between the manufacturer-installed coolant and the aluminum components of the engine. Lastly, FCA's actual knowledge of the sludge without knowledge

of the alleged defect giving rise to the breach of warranty claim does not further the justification for the pre-suit notice requirement.

Plaintiffs have failed to comply with the pre-suit notice requirement, so the breach of warranty claims in counts one through three are dismissed with prejudice.[4] *See Miller v. Hypoguard USA, Inc.*, No. 05-CV-0186-DRH, 2005 WL 3481542, at *2-3 (S.D. Ill. Dec. 20, 2005) (dismissing breach of warranty claim with prejudice for failing to provide pre-suit notice).

### III. Other Matter

The only claim that remains in this case is Plaintiffs' claim in count four brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act. FCA argues that this claim fails to state a claim for relief because Plaintiffs have failed to plead with particularity the facts necessary to support the elements of the claim. The Court, however, must first ensure that it has jurisdiction over this claim.

The complaint and proposed amended complaint allege that this court has original subject matter jurisdiction over the MMWA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Class's state law claims under 28 U.S.C. § 1367, as well as diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Now that the MMWA claim is no longer in the case, the only basis for this Court's jurisdiction is under 28 U.S.C. § 1332(d).

The Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), creates "federal subject matter jurisdiction if (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ('minimal diversity'); and

---

[4] Because the Court has considered both the original complaint and the proposed amended complaint, it finds that the dismissal should be with prejudice. Plaintiffs' original and proposed amended complaint both suffer from the deficiencies discussed above.

(3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (citing 28 U.S.C. § 1332(d)).

Unfortunately, the complaint fails to properly allege the citizenship of FCA. CAFA states that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Plaintiffs only allege that FCA "is a Delaware limited liability company with its headquarters in Auburn Hills, Metro Detroit, Michigan." (Doc. 1, p. 4). Although the location of a corporation's headquarters is usually the same as its principal place of business, this is not always the case. *See Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986).

In addition, Plaintiffs only make a conclusory allegation that the amount in controversy exceeds $5,000,000, and they fail to explain why this is so. Plaintiffs must allege that the amount in controversy is satisfied as to the Illinois Consumer Fraud and Deceptive Business Practices Act Claim. *See Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (requiring CAFA plaintiff to "provide[] plausible, good-faith estimates demonstrating how the stakes exceed $5,000,000"); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.").

Lastly, in light of the recent decision by the Seventh Circuit Court of Appeals, *Daley v. Jones Motor Company*, the Court also questions whether Plaintiffs have met their burden to show that the numerosity jurisdictional prerequisite is met. *See Daley v. Jones Motor Company*,

*Inc.*, No. 18-1924, 743 F. App'x 35, 37-38 (7th Cir. 2018).

Accordingly, pursuant to 28 U.S.C. § 1653, Plaintiffs are ordered to file an amended complaint that properly sets forth the basis for this Court's CAFA jurisdiction over the Illinois Consumer Fraud and Deceptive Business Practices Act claim.

## Conclusion

For the reasons explained above, Defendant FCA's Motion to Dismiss (Doc. 18) is **GRANTED in part and DENIED in part. The motion is denied to the extent it seeks dismissal for lack of standing pursuant to Rule 12(b)(1), but granted to the extent it seeks dismissal of the warranty claims pursuant to Rule 12(b)(2).** In light of this ruling, Plaintiffs' Motion for Leave to Amend (Doc. 22) is **DENIED as moot.** The warranty claims within counts one through three are **DISMISSED with prejudice**. Pursuant to footnote 2, Plaintiff Brian Kochman is **TERMINATED** as a party to this action based on the stipulation of dismissal filed on November 16, 2018.

Plaintiffs are **ORDERED** to file an amended complaint, on or before **Monday, April 15, 2019**, that properly sets forth the basis for this Court's jurisdiction over the Illinois Consumer Fraud and Deceptive Business Practices Act claim.

**IT IS SO ORDERED.**

**DATED: March 18, 2019**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**